UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JESSICA HUMBERTSON,

    Plaintiffs,

v.                             Case No: 8:23-cv-1709-MSS-AAS

PROGRESSIVE SELECT
INSURANCE COMPANY,

    Defendant.

_____

## ORDER

**THIS CAUSE** comes before the Court for consideration of Defendant Progressive Select Insurance Company's Motion for Summary Judgment, (Dkt. 77), Plaintiff's response thereto, (Dkt. 82), Defendant's reply, (Dkt. 83), and the Parties' Joint Stipulation of Undisputed Material Facts. (Dkt. 81) Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court **DEFERS RULING** on Defendant's Motion and **STAYS THE CASE** to provide the trustee an opportunity to consider reopening the bankruptcy action and seeking relief on behalf of the bankruptcy estate of the insured, Jenckes.

### I. BACKGROUND

#### a. Procedural Background

On March 21, 2023, Plaintiff Jessica Humbertson filed this bad faith action in state court against Defendant Progressive Select Insurance Company ("Progressive").

(Dkt. 1-1) Progressive removed this action from state court on August 1, 2023. (Dkt. 1) Plaintiff alleges Progressive acted in bad faith under Florida law in handling a bodily injury claim brought by Plaintiff against Progressive's insured, Joshua Jenckes, which resulted in an excess final judgment entered against Jenckes. (Id.) Plaintiff alleges that Jenckes suffered damages in the excess of his policy limits as a result of Progressive's bad faith and she suffers damages as a judgment creditor to Jenckes. (Id.) Progressive moves for summary judgment on Plaintiff's claims. (Dkt. 77)

### b. Undisputed Facts

The following facts are undisputed in this record for the purpose of resolving the motions. On February 10, 2019, Plaintiff was involved in a motor vehicle accident with Joshua Jenckes. (Dkt. 81) At the time of the accident, Progressive insured Jenckes under an automobile liability policy that provided $25,000 per person in bodily injury ("BI") coverage. (Id.) Plaintiff alleges that she suffered significant and permanent injuries and damages as a result of the collision that were clearly in excess of Jenckes's policy limits and that she made multiple written offers to settle her claims against Jenckes for the policy limits, but Progressive refused to settle the claim.[1] On January 28, 2020, Plaintiff filed a personal injury lawsuit against Jenckes. On August 16, 2022, the court entered an excess judgment against Jenckes in the amount of $469,849.22.

---

[1] Progressive disputes the allegations in this sentence. (Dkt. 8 at ¶¶ 10–12) The Court provides this allegation for context only, as the truth of whether Progressive is actually liable for bad faith is not relevant to the resolution of this motion.

2

(Dkt. 30-34). Later, on August 9, 2023, the court entered an amended final judgment against Jenckes in the amount of $493,787.74. (Dkt. 48 at 6)

In the meantime, on March 21, 2023, Plaintiff filed this action against Progressive, bringing one claim for common law bad faith due to Progressive's alleged failure to settle Plaintiff's claim within the policy limits. (Dkt. 1) On May 31, 2024, while this action was pending, Jenckes filed for bankruptcy. (Dkt. 81) In his bankruptcy petition, Jenckes listed Plaintiff as a creditor with a nonpriority unsecured claim in the amount of the excess final judgment. Notably, Jenckes did not list any bad faith action as an asset of the estate. (Id.; Dkt. 74-1 at 13)[2] Notice of the bankruptcy was sent to Plaintiff's counsel and was also filed in the underlying personal injury action. Importantly, Plaintiff did not file any claim or objection in the bankruptcy action. On September 13, 2024, an order of discharge was entered and granted to Jenckes. (Id.; Dkt. 74-8) The policy that Progressive issued to Jenckes provides that "[t]he bankruptcy or insolvency of an insured person will not relieve us of any obligations under this policy." (Dkt. 82-1) Progressive now moves for summary

---

[2] Progressive attached Jenckes's bankruptcy petition as an exhibit to its motion for leave to file second motion for summary judgment. (Dkt. 74-1) The Parties cite the petition in their joint statement of agreed facts. (Dkt. 81) In addition, Progressive cites the petition in its Motion, (Dkt. 77 at 3), and Plaintiff cites the petition in her response. (Dkt. 82 at 7) Accordingly, the Court takes judicial notice of Jenckes's bankruptcy petition. (Dkt. 74-1) See also ITT Rayonier Inc. v. United States, 651 F.2d 343, 345 n.2 (5th Cir. July 20, 1981) (recognizing that courts may take judicial notice of its own records or those of inferior courts). In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

judgment, arguing that the discharge of Jenckes's responsibility for the excess judgment relieves Progressive of any liability.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fennell v. Gilstrap, 559 F.3d 1212, 1216 (11th Cir. 2009) (citing Welding Servs., Inc. v. Forman, 509 F.3d 1351, 1356 (11th Cir. 2007)). Which facts are material depends on the substantive law applicable to the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

Evidence is reviewed in the light most favorable to the non-moving party. Fennell, 559 F.3d at 1216 (citing Welding Servs., Inc., 509 F.3d at 1356).  A moving party discharges its burden on a motion for summary judgment by showing or pointing out to the Court that there is an absence of evidence to support the non-moving party's case. Denney v. City of Albany, 247 F.3d 1172, 1181 (11th Cir. 2001) (citation omitted).

When a moving party has discharged its burden, the non-moving party must then designate specific facts (by its own affidavits, depositions, answers to interrogatories, or admissions on file) that demonstrate there is a genuine issue for trial. Porter v. Ray, 461 F.3d 1315, 1320-1321 (11th Cir. 2006) (citation omitted). The party opposing a motion for summary judgment must rely on more than conclusory

statements or allegations unsupported by facts. <u>Evers v. Gen. Motors Corp.</u>, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value."). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

### III.    DISCUSSION

Progressive argues that summary judgment should be granted in its favor because the discharge of Jenckes's liability for the underlying excess judgment precludes any action for bad faith against his insurer. Plaintiff responds that Jenckes's bankruptcy has no bearing on this matter other than serving as further evidence of the repercussion of Progressive's decision to put its own pecuniary interests ahead of its insured.

### a.    Florida Bad Faith Law

Under Florida law, when handling the defense of claims against its insured, an insurer has "'a duty to exercise such control and make such decisions in good faith and with due regard for the interests of the insured.'" <u>Macola v. Gov't Emps. Ins. Co.</u>, 953 So. 2d 451, 455 (Fla. 2006) (quoting <u>Boston Old Colony Ins. Co. v. Gutierrez</u>, 386 So. 2d 783, 785 (Fla. 1980)); <u>see also</u> <u>Perera v. U.S. Fid. & Guar. Co.</u>, 35 So. 3d 893, 898 (Fla. 2010). The essence of a bad faith cause of action against an insurer is that the insurer breached the fiduciary duty owed to its insured either by wrongfully refusing to defend its insured in a liability context or by wrongfully refusing to settle the case

within policy limits, thereby exposing the insured to a judgment exceeding the policy coverage. Perera, 35 So. 3d at 899; Cunningham v. Standard Guar. Ins. Co., 630 So.2d 179, 181 (Fla. 1994) ("[T]he essence of a third-party bad faith cause of action is to remedy a situation in which an insured is exposed to an excess judgment because of the insurer's failure to properly or promptly defend the claim."). Although this duty is owed to the insured, the injured third-party may nonetheless "stand in the shoes" of the insured and bring a third-party bad faith action to recover the amount of an excess judgment without an assignment of the claim. Macola, 953 So. 2d at 455; Fid. & Cas. Co. of N.Y. v. Cope, 462 So. 2d 459, 461 (Fla. 1985).

### b.    Bankruptcy

Before turning to the parties' arguments, some discussion of bankruptcy principles is warranted. "The federal system of bankruptcy . . . intends to aid the unfortunate debtor by giving him a fresh start in life[.]" Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1289 (11th Cir. 2002) (quoting Stellwagen v. Clum, 245 U.S. 605, 617 (1918)). Under Chapter 7 of the Bankruptcy Code, a discharge "discharges the debtor from all debts that arose before the date of the order for relief[.]" 11 U.S.C. § 727(b). Thus, "[a] bankruptcy discharge and concomitant injunction against subsequent actions are designed to give the debtor a fresh start." In re Jet Fla. Sys., Inc., 883 F.2d 970, 972 (11th Cir. 1989).

Although "section 524(a) prohibits a plaintiff from proceeding against a debtor who has received a discharge of debt in order to recover from the bankruptcy estate," a bankruptcy discharge "will not act to enjoin a creditor from taking action against

another who also might be liable to the creditor." <u>In re Jet Fla. Sys., Inc.</u>, 883 F.2d at 973, 976. Thus, "[t]he 'fresh-start' policy is not intended to provide a method by which an insurer can escape its obligations based simply on the financial misfortunes of the insured." <u>Id.</u> at 975. As a result, "a plaintiff may proceed against the debtor simply in order to establish liability as a prerequisite to recover from another, an insurer, who may be liable." <u>Id.</u> at 976; <u>In re W.G. Wade Shows, Inc.</u>, 234 B.R. 185, 188 (Bankr. M.D. Fla. 1999) ("It is generally agreed that the scope of Section 524(a) does not affect the liability of the insurer and does not prohibit proceeding against the Debtor for the limited purpose to enable the tort plaintiff to establish liability."); <u>see also</u> <u>Green v. Welsh</u>, 956 F.2d 30, 35 (2d Cir. 1992) ("[W]e believe that § 524 permits a plaintiff to proceed against a discharged debtor solely to recover from the debtor's insurer.").

Insurance policies owned by the debtor at the time of filing a bankruptcy petition become a part of the bankruptcy estate. <u>See</u> 11 U.S.C. § 541(a)(1); <u>Fed. Ins. Co. v. Banyon 1030-32</u>, No. 8:10-cv-682-T-33AEP, 2010 WL 3824200, at *2 (M.D. Fla. Sept. 27, 2010) ("Insurance policies in a debtor's name . . . are considered property of the debtor's estate[.]"). Insurance proceeds, however, generally do not become a part of a bankruptcy estate unless the debtor would personally have the right to keep and receive those proceeds. <u>See</u> <u>Matter of Edgeworth</u>, 993 F.2d 51, 55 (5th Cir. 1993) ("The overriding question in determining whether insurance proceeds are property of the estate is whether the debtor would have a right to receive and keep those proceeds when the insurer paid on the claim. When payment by an insurer cannot inure to the debtor's pecuniary benefit, then that payment should neither enhance nor decrease the

7

bankruptcy estate."); see also In re Scott Wetzel Servs., Inc., 243 B.R. 802, 804 (Bankr. M.D. Fla. 1999) (debtor has no cognizable interest in insurance proceeds in a typical liability policy because "the proceeds will normally be payable only for the benefit of those harmed by the debtor"). Because these proceeds are not part of the estate, bankruptcy courts allow third-party tort claimants to proceed against a debtor in name only to obtain a judgment and then seek payment from the debtor's insurance company. In such cases, the debtor would have no personal right to the proceeds of the policy and thus the payment goes straight to the third-party claimant, not to the bankruptcy estate.

Similarly, a debtor's potential claims or causes of action that exist at the time of filing a bankruptcy petition become a part of the bankruptcy estate. See 11 U.S.C. § 541(a)(1); Jones v. Harrell, 858 F.2d 667, 669 (11th Cir. 1988) ("A trustee in bankruptcy succeeds to all causes of action held by the debtor at the time the bankruptcy petition is filed."). "Once an asset becomes part of the bankruptcy estate, all rights held by the debtor in the asset are extinguished unless the asset is abandoned back to the debtor[.]" Parker v. Wendy's Int'l, Inc., 365 F.3d 1268, 1272 (11th Cir. 2004). At the close of the bankruptcy case, property that is neither abandoned nor administered remains the property of the estate. Id. "Failure to list an interest on a bankruptcy scheduled leaves that interest in the bankruptcy case." Id.

### c.   Bad Faith and Bankruptcy

With this context, Progressive argues that Plaintiff cannot "stand in the shoes" of Jenckes to bring this bad faith claim because the underlying debt has been

8

discharged and Jenckes has no longer been damaged by the excess judgment. In support of this assertion, Progressive relies on three cases that merit further discussion: Fid. & Cas. Co. of N.Y. v. Cope, 462 So. 2d 459 (Fla. 1985); Clement v. Prudential Prop. & Cas. Ins. Co., 790 F.2d 1545 (11th Cir. 1986); and the line of cases beginning with Camp v. St. Paul Fire & Marine Ins. Co., 127 B.R. 879 (N.D. Fla. 1991) ("Camp I").[3]

In Cope, the Florida Supreme Court held that an injured third-party who had secured an excess judgment could not maintain a bad faith claim against the insurer when the injured party has executed a release of his claim against the insured tortfeasor. 462 So. 2d at 461. The court found that the third party's cause of action was "not separate and distinct from, but was derivative of" the insured's. Id. As a result, a satisfaction or release of the insured extinguishes the third party's ability to bring the cause of action.

In Clement, the insured and third-party claimant agreed to settle the claim for $75,000, with the understanding that the insured would not be liable for any sum in excess of the $10,000 policy limits. 790 F.2d at 1546. As part of the agreement, the insured agreed to prosecute the bad faith action against his insurer. Relying on Cope, the Eleventh Circuit held that, because the insured was no longer exposed to any loss in excess of the policy limits, his bad faith claim ceased to exist. Id. at 1548.

---

[3] See also Camp v. St. Paul Fire & Marine Ins. Co., 958 F.2d 340 (11th Cir. 1993) ("Camp II"); Camp v. St. Paul Fire & Marine Ins. Co., 616 So. 2d 12, 15 (Fla. 1993) ("Camp III"); Camp v. St. Paul Fire & Marine Ins. Co., 989 F.2d 428, 429 (11th Cir. 1993) ("Camp IV").

Finally, in Camp I, the plaintiff sued a doctor for medical malpractice. 127 B.R. at 880. Prior to the resolution of the malpractice action, the doctor filed a Chapter 7 bankruptcy case and received a discharge, which included Camp's pending claim. The bankruptcy court allowed Camp's case to proceed so she could liquidate her claim against the debtor doctor, but specifically ruled that any judgment obtained would not be personally enforceable against the debtor doctor. Camp II, 958 F.2d at 341–42. After an excess judgment was entered in the malpractice action, Camp and the bankruptcy trustee agreed to jointly prosecute a bad faith claim against the doctor's insurer for failure to settle within the policy limits. They agreed that any recovery would go to the bankruptcy estate, and the plaintiff would only share in those funds as an unsecured creditor. Camp I, 127 B.R. at 882. The district court granted summary judgment in favor of the insurer on two bases: (1) by agreeing to share in any recovery through the bankruptcy estate, Camp lacked independent standing to sue the insurer; and (2) because the doctor's obligation to pay the excess judgment was discharged in bankruptcy, Cope and Clement precluded any bad faith claim. Id. at 882.

On appeal to the Eleventh Circuit, Camp and the trustee argued that "importing" Cope and Clement into the bankruptcy context was "ill-advised" because "[u]nder a regime in which a named insured's bankruptcy insulated all bad faith exposure, insurance companies might have an incentive to contribute to the named insured's bankruptcy, or might refuse to settle clearly legitimate claims if the named insured's bankruptcy was imminent or even possible." Camp II, 958 F.2d at 340. The Eleventh Circuit found this to raise an issue of first impression under Florida law and

10

certified to the Florida Supreme Court the question of whether an insured's discharge from liability prior to exposure to an excess judgment precludes either the injured party's or bankruptcy trustee's subsequent bad faith action. Id. at 344.

The Florida Supreme Court held that a named insured's bankruptcy does not bar a bad faith action by the bankruptcy trustee. Camp III, 616 So. 2d at 13. The court reasoned that the excess judgment harmed the bankruptcy estate because the estate "stood in the shoes" of the doctor. Id. at 15. The court further noted that, under federal bankruptcy law, insurance policies and potential claims owned by a debtor at the time of his petition become part of the estate. Id. (citing 11 U.S.C. § 541(a); Palmer v. Travelers Ins. Co., 319 F.32d 296, 299–300 (5th Cir. 1963)). Finally, the court noted that the language of the policy affirmed that, "even if the insured filed bankruptcy, [the insurer] would bear the duty to defend and pay off a claim up to the policy limits." Id. As such, the Court reasoned that the insurer assumed a duty to the bankruptcy estate and should have known that its failure to settle a claim would affect the bankruptcy estate.

Upon return of proceedings to the Eleventh Circuit, the court noted that the Florida Supreme Court's holding was contrary to the district court's ruling and reversed the decision on that basis. Camp IV, 989 F.2d at 429. The decision was partially affirmed, however, as the Eleventh Circuit agreed that the district court properly dismissed Camp as a plaintiff for lack of standing. Id.

### d.    Analysis

Relying on the above-referenced authority, Progressive argues that Plaintiff can no longer maintain her bad faith claim given Jenckes's bankruptcy discharge. Plaintiff raises three arguments in response: (1) she, as a third-party beneficiary, has an independent cause of action separate from Jenckes's rights; (2) an insured's insolvency does not preclude a bad faith action against an insurer; and (3) the bad faith action has no bearing on the bankruptcy and was not discharged. The Court addresses each argument in turn.

### i.    Third-Party Beneficiary

Plaintiff argues that Cope and Clement do not stand for the proposition that Jenckes's bankruptcy discharge extinguished her claim because she has independent standing as a third-party beneficiary of Jenckes's insurance policy. In support of this assertion, Plaintiff relies on Thompson v. Com. Union Ins. Co., 250 So. 2d 259 (Fla. 1971). In Thompson, the Florida Supreme Court held that "a judgment creditor may maintain suit directly against [a] tortfeasor's liability insurer for recovery of the judgment in excess of the policy limits, based upon the alleged fraud or bad faith of the insurer in the conduct or handling of the suit." Id. at 264. In so holding, it adopted the reasoning from an earlier concurring opinion which stated, in relevant part, that "every automobile liability insurance policy should be construed as a third-party beneficiary contract entitling a judgment creditor to recover in a direct action against the insured [sic] for the excess of his judgment over policy limits in those cases where the insurer is guilty of negligence or bad faith in handling the claim." Id. at 262, 264.

12

Plaintiff further notes that Cope and Clement each involved claims in which the injured third party released the insured from liability. Thus, Plaintiff concludes that these cases do not support the proposition that an existing bad faith claim against an insurer is extinguished upon the insured's bankruptcy discharge.

Plaintiff is incorrect. As an initial matter, the Cope court rejected any interpretation of Thompson suggesting that a bad faith claim belongs outright to the injured third party and is not fundamentally derivative of the duty owed by the insurer to its insured:

> In *Thompson* this Court, contrary to our prior decision in *Sturgis v. Canal Insurance Co.*, 122 So.2d 313 (Fla.1960), authorized an injured party to maintain a bad faith claim against an insurer. The Court based *Thompson* on public policy and justified it on the *Shingleton v. Bussey*, 223 So.2d 713 (Fla.1969), third party beneficiary concept and the right of a real party in interest to maintain a suit. Nowhere in *Thompson*, however, did we change the basis or theory of recovery. We did not extend the duty of good faith by an insurer to its insured to a duty of an insurer to a third party. **The basis for an action remained the damages of an insured from the bad faith action of the insurer which caused its insured to suffer a judgment for damages above his policy limits**. Thompson merely allowed the third party to bring such an action in his own name without an assignment.
>
> An essential ingredient to any cause of action is damages. In this case [the insured] originally suffered a judgment in excess of his policy. Before this action was filed, however, the judgment was satisfied. Upon its being satisfied [the insured] no longer had a cause of action; if he did not, then Cope did not. Cope's action was not separate and distinct from, but was derivative of [the insured's].

462 So. 2d at 460–61 (emphasis added). The same rationale applies here. Because Jenckes has no longer been damaged by the excess judgment, he has no cause of action against Progressive. If Jenckes does not, Plaintiff does not.

13

Moreover, to the extent Plaintiff argues that the third party's release of the insureds in Cope and Clement is the key factor that extinguished those claims, the Court rejects the argument. Both courts emphasized that it was the insured's lack of damages that extinguished the claim. Cope, 462 So. 2d at 461; Clement, 790 F.2d 1545. By way of further example, the Eleventh Circuit's discussion in May v. Ill. Nat'l Ins. Co., 190 F.3d 1200 (11th Cir. 1999) is instructive. In May, the plaintiff was an administrator ad litem of a probate estate who brought suit to recover against the decedent's automobile liability insurer for bad faith refusal to settle a claim resulting from an automobile accident in which the decedent was at fault. The injured third party in that case failed to timely file a claim in the probate proceeding. The trial court granted summary judgment in favor of the insurer on the ground that the estate was not liable for the excess judgment because the injured party failed to preserve his claim against the estate. The court explained that "[i]f a deceased insured's estate is not obligated to pay the excess judgment, then no cause of action for bad faith exists." Id. at 1202; see also id. at 1204 (finding Camp III inapplicable to the facts of the case because "[i]n the instant case, the estate is insulated from liability by operation of law, if the failure to file a claim in the probate estate bars the claim").

    ii.       Insolvency and Bad Faith

Plaintiff next argues that an insured's insolvency does not preclude a bad faith action against the insurer and Progressive's reliance on the Camp cases is misplaced. In support, she notes that the issue in that line of cases was whether the bad faith claim was barred by the fact that the bankruptcy specifically discharged the insured doctor's

14

personal liability *prior* to entry of the excess judgment such that the doctor was never personally liable for the debt. She then emphasizes that "the Florida Supreme Court rejected the notion that the bankruptcy extinguished the insurer's liability for bad faith and held that the excess judgment against the insured doctor constituted harm to the bankruptcy estate, which could have been avoided had [the insurer] settled the malpractice claim." (Dkt. 82 at 13)

The Court agrees that the timing of the bankruptcy discharge and excess judgment was a key factor in <u>Camp</u> but disagrees with the notion that the court implicitly rejected the idea that a bankruptcy discharge extinguishes a cause of action for bad faith. Instead, the court found that the doctor's bankruptcy discharge—which occurred while the malpractice action was still pending—put his bankruptcy estate in the doctor's shoes such that it was the bankruptcy estate that was damaged by the excess judgment. In other words, the discharge in the midst of litigation did not preemptively absolve the insurer of its obligation to act in good faith, it just extended that obligation to the estate.

Plaintiff next argues that, while the Florida Supreme Court held that the trustee acted properly in filing the bad faith claim, the court was silent as to Camp's ability to bring the bad faith claim. Stated differently, Plaintiff claims that while the trustee was authorized to proceed with the bad faith claim, there is no suggestion that Camp could not have "stood in the shoes" of the bankruptcy estate to bring the claim.[4]

---

[4] To that end, Plaintiff implies that Florida Supreme Court limited its language to the trustee because of the agreement between the claimant and the trustee that any recovery would flow

15

Progressive responds that the Florida Supreme Court was not "silent" because it addressed the question of whether the named insured's bankruptcy and discharge from liability prior to exposure to an excess judgment precludes "an injured party's or bankruptcy trustee's subsequent bad faith cause of action against an insurance company" by answering that "a name insured's bankruptcy does not bar a bad faith action by the bankruptcy trustee." (Dkt. 83 at 6 n.2); Camp III, 616 So. 2d at 13. Progressive is correct.

While the Florida Supreme Court did not specifically state that Camp could not bring an action, it stated that the claim belonged to the estate, and, on that basis, the Eleventh Circuit affirmed the district court's dismissal of Camp for lack of standing. Id. at 15; Camp IV, 989 F.2d at 429; see also Parker v. Wendy's Int'l, Inc., 365 F.3d 1268, 1272 (11th Cir. 2004) ("Generally speaking, a pre-petition cause of action is the property of the Chapter 7 bankruptcy estate, and only the trustee in bankruptcy has standing to pursue it."); In re Kozich, 406 B.R. 949, 954 (Bankr. S.D. Fla. 2009) ("It is well established that, if the cause of action is an asset of the estate, 'the trustee alone has standing to bring that claim.'") (quoting Nat'l Am. Ins. Co. v. Ruppert Landscaping Co., 187 F.3d 439, 441 (4th Cir. 1999)); Whritenour v. Thompson, 145 So. 3d 870, 873 (Fla. 2d DCA 2014) ("A tortfeasor's bankruptcy filing and discharge does not change [the procedure for bringing bad faith claims]. The only difference is

---

through the estate and be distributed on a pro rata basis. The Court rejects this assertion, as this "agreement" merely reflects what bankruptcy law requires. See 11 U.S.C. § 726.

16

that the bankruptcy trustee brings the bad faith action against the insurance company.") (citing Camp III, 616 So. 2d at 15).

### iii.       Bad Faith Claim's Relevance to Bankruptcy

Finally, Plaintiff argues that bad faith claims have no bearing on bankruptcy proceedings and are not discharged through bankruptcy proceedings. In support, Plaintiff cites five orders in which bankruptcy courts have permitted third parties to pursue bad faith claims against a debtor's insurance company. See E. Coast Brokers & Packers, Inc. v. Oakwood Place, Inc., No. 8:13-bk-2894-KRM, 2010 WL 11827139, at *1 (Bankr. M.D. Fla. July 2, 2010) (permitting claimants to pursue recovery against debtor's insurance policy and finding claimants waived any claim against debtors in excess of available insurance proceeds, though such waiver did not release or discharge any action claimants may have against debtor's insurance carrier for bad faith); Order Denying Motion to Reopen Case as Moot, Dkt. 12, In re Read, No. 3:24-bk-2834-BAJ (Bankr. M.D. Fla. Feb. 21, 2025) (allowing claimant to proceed with pre-petition claim against debtor's insurer "solely against the proceeds of any available insurance policy . . . which may include extracontractual damages if the liquidated auto negligence claim exceeds Debtor's coverage") (Dkt. 82-2); Order Granting Creditor's Motion for Relief From the Automatic Stay, Dkt. 54, In re Riette, No. 3:18-bk-2945-JAF (Bankr. M.D. Fla. Nov. 15, 2019) (allowing creditor to proceed with personal injury action for purposes of establishing and liquidating his claims against the Debtor and allowing creditor to "pursue any recovery associated therewith solely from Debtor's insurance carrier.") (Dkt. 82-3); Order Granting in Part Motion to Modify Automatic Stay, Dkt.

17

22, In re Charles, No. 21-16991-EPK (Bankr. S.D. Fla. Oct. 1, 2021) (denying as moot motion to lift stay with respect to bad faith claims against debtor's insurer as the "automatic stay does not apply to such claims") (Dkt. 82-4); Agreed Order Granting Brian Findeson's Motion for Relief from Stay, Dkt. 258, In re Jason's Hauling, Inc., No. 8:21-bk-00843-MGW (Bankr. M.D. Fla. Sep. 28, 2021) ("In the event the Movant or his spouse obtains a recovery or judgment against the Debtor, the Movant and his spouse shall enforce the recovery or judgment against the Debtor's liability insurance and insurer(s) . . . . No further order of the Court is necessary for Movant or his spouse to pursue any claims and rights they may have against the Debtor's liability insurance and insurer(s).") (Dkt. 82-5)

These cases do not change this Court's analysis. First, two of these cases simply permit the claimants to liquidate their principal tort claims against the debtor so they may ultimately recover from the insurance company. (Dkts. 82-3, 82-5) Moreover, in one case, a bankruptcy court simply found the automatic stay not to apply to a claimant's bad faith claims against the debtor's insurer. (Dkt. 82-4) This holding is consistent with this Court's ruling. Namely, the automatic stay in bankruptcy applies to cases brought against a debtor, not cases brought by a debtor (or by someone standing in the shoes of the debtor). See, e.g., In re Kozich, 406 B.R. at 953 ("Section 362, by its own terms, only stays proceedings *against the debtor.*") (citing 11 U.S.C. § 362) (emphasis in original).

Finally, two cases do appear to authorize the claimant to proceed with a bad faith action against the debtor's insurer and require further discussion. In In re Read,

18

a claimant moved to reopen a bankruptcy case and modify the discharge injunction to establish and liquidate her pre-petition auto negligence claim against the debtor. (Dkt. 82-2) The bankruptcy court denied the motion as moot, finding the injunction did not preclude the claimant's recovery against a third-party insurer. It then stated that the claimant could "prosecute and liquidate her claims . . . solely against the proceeds of any available insurance policy under any applicable coverage, which may include extracontractual damages if the liquidated auto negligence exceeds Debtor's coverage." (Id.) First, the Court notes that the case contains no analysis of the claimant's ability to bring a bad faith claim, and there is no indication that the issues raised here were raised in that case. Moreover, it is not the obligation of the bankruptcy court to preemptively opine on a claimant's standing to bring a bad faith claim, particularly when it had not been raised. Cf. In re Collins, No. 24-11235, 2025 WL 2046098, at *5 (Bankr. D. Kan. July 18, 2025) (noting that "the merits of Creditor's *potential* claims against Progressive are neither ripe for adjudication, nor before the Court") (emphasis in original).

In E. Coast Brokers & Packers, Inc., the claimants sought relief from the bankruptcy stay (not discharge) to proceed with their pre-bankruptcy state court tort action. 2010 WL 11827139, at *1. The court authorized the claimants to proceed in order to pursue recovery "to the extent of any proceeds available under Debtor's insurance policy[.]" Id. It then stated that the claimants "waive and release any claim in excess of available insurance proceeds against the Debtor and its bankruptcy estate and shall not be permitted to pursue recovery against the Debtor outside of the

19

insurance coverage available[.]" Id. Finally, the court noted that "such waiver does not release or discharge any action [the claimants] may have against the Debtor's insurance carrier for any bad faith failure to resolve [the claims] within applicable policy limits." Id. Once again, the case contains no analysis of the claimants' ability to bring a bad faith claim, there is no indication that the issues raised here were raised in that case, and it is not the obligation of the bankruptcy court to preemptively opine on the claimants' standing to bring a bad faith claim (particularly when it had not been raised).

Plaintiff then argues that the language in the policy that the "bankruptcy or insolvency of an insured person will not relieve us of any obligations under this policy" preserves Plaintiff's claim against Progressive. Progressive responds that this provision simply requires it to defend and indemnify an insured up to the policy limits in an action against him, even if he files for bankruptcy. Progressive is correct. Notably, the policy at issue in the Camp cases contained similar language: "If the protected person or his or her estate goes bankrupt or becomes insolvent, we'll still be obligated under this policy." Camp III, 616 So. 2d at 15. The Florida Supreme Court held that this language "affirms that, even if the insured filed bankruptcy, [the insurer] would bear the duty to defend and pay off a claim *up to the policy limits*." Id. (emphasis added).

Finally, Plaintiff notes that Progressive previously filed a motion in limine in this case asserting that Jenckes's bankruptcy was irrelevant to this bad faith action. (Dkt. 63) Plaintiff asserts that this qualifies as a judicial admission and once an admission is made, the subject matter cannot be reopened absent the showing of

20

exceptional circumstances. The Court rejects this argument, as a legal position taken in a motion does not qualify as a judicial admission. Cf. Starbuck v. R.J. Reynolds Tobacco Co., 349 F. Supp. 3d 1223, 1233 (M.D. Fla. 2018) ("Judicial admissions must be statements of fact that require evidentiary proof, not statements of legal theories.") (quotations and citations omitted). Moreover, the assertion that evidence of Jenckes's bankruptcy is not relevant to the determination of whether Progressive acted in bad faith in handling the underlying claim is not inconsistent with the assertion that Jenckes's bankruptcy discharge precludes Plaintiff's claim as a matter of law.

## IV.    CONCLUSION

The Court takes a moment to emphasize that this analysis is not intended to support rewarding insurers who operate in bad faith and push their insureds into bankruptcy thereby relieving them of any liability for bad faith. When an insured who has been harmed by an excess judgment files for bankruptcy, the bad faith claim becomes an asset of the bankruptcy estate and the injured third party has a claim against the estate. The trustee may then prosecute the bad faith claim and any recovery would be distributed to the estate's creditors on a pro rata basis. In such a case, the insurer would still be liable for the same amount of damages. While the injured third-party claimant may not ultimately receive the full excess judgment, the claimant is in the same position as all other creditors of the estate who likely will not be made entirely whole.

Under certain circumstances, summary judgment would be appropriate in Progressive's favor for the reasons discussed in this Order. Such a ruling could result

in a windfall for Progressive and an unintended forfeiture for Plaintiff if it is true that Progressive acted in bad faith. Here, however, it appears from the record that Jenckes failed to disclose his potential bad faith claim against Progressive in the bankruptcy proceedings.[5] (Dkt. 74-1 at 13) Thus, the Court concludes that the better course of action may be to **STAY** entry of judgment to afford Plaintiff the opportunity to bring this claim to the attention of Jenckes's bankruptcy trustee to give the trustee an opportunity to evaluate this claim. If the trustee wishes to pursue the claim, the trustee may seek to reopen the bankruptcy proceedings and, if permitted to do so, file a Rule 17 motion to be substituted as the real party in interest. See Parker, 365 F.3d at 1272 (allowing bankruptcy trustee to proceed—post bankruptcy discharge—with racial discrimination claim the debtor failed to disclose in bankruptcy action).

Accordingly, within **fourteen (14) days** of the date of this Order, the Parties shall confer, and if they disagree as to this process, they may assert any objections to this process by way of a motion. The Court will resolve any objections.

If no objection is interposed, the Parties shall take appropriate action to notify the trustee of this bad faith action. If the trustee seeks to pursue the claim and the bankruptcy court permits it, the trustee will be given a reasonable opportunity to seek to intervene in this action. If the trustee evaluates the claim and determines not to

---

[5] As a matter of practicality, creditors often do not file claims in Chapter 7 bankruptcy proceedings where the debtor has limited assets. See In re Ernandez, No. 15-2775-JCO, 2016 WL 1726729, at *1 (Bankr. S.D. Ala. Apr. 27, 2016) ("This case is what is commonly referred to as a 'No-Asset Chapter 7,' i.e., there are no assets to administer and creditors are not even required to file claims."); see also Dkt. 74-2.

pursue it, Progressive shall notify the Court no later than **seven (7) days** after the trustee notifies the Parties of that decision.

Upon consideration of the foregoing, it is hereby **ORDERED** as follows:

1. The Court **DEFERS RULING** on Defendant Progressive Select Insurance Company's Motion for Summary Judgment. (Dkt. 77)

2. The Clerk is **DIRECTED** to **STAY** this case.

3. Within **fourteen (14) days** of the date of this Order, the Parties shall confer on whether they agree to the process outlined in Section IV of this Order. If the Parties disagree as to this process, either party may assert an objection to this process by way of a motion within **fourteen (14) days** of the date of this Order.

4. If the trustee evaluates the claim and determines not to pursue it, Progressive shall notify the Court no later than **seven (7) days** after the trustee notifies the Parties of that decision.

**DONE** and **ORDERED** in Tampa, Florida, this 26th day of March 2026.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of Record
Any Unrepresented Person

23